T.C. Memo. 2002-118

UNITED STATES TAX COURT

DENNIS KATZ, D.D.S., P.C., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8498-00.                    Filed May 14, 2002.

<u>Elizabeth J. Atkinson</u>, for petitioner.

<u>Sandra M. Jefferson</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

POWELL, <u>Special Trial Judge</u>: This is an employment status determination case brought pursuant to section 7436.[1] On May 9, 2000, respondent mailed to petitioner a Notice of Determination Concerning Worker Classification under section 7436, in which it was determined that, during the taxable years 1996 and 1997, Dennis Katz was a statutory employee of petitioner and petitioner

---

[1] Except with reference to sec. 530 of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2885, section references are to the Internal Revenue Code applicable to the years in question.

was not entitled to relief from employment tax liability under section 530 of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2885 (hereinafter section 530). On August 7, 2000, petitioner filed a timely petition for review of respondent's determinations.

FINDINGS OF FACT

The facts are essentially undisputed and may be summarized as follows. Petitioner is a professional corporation organized pursuant to the laws of the Commonwealth of Virginia in 1971 for the purpose of rendering "professional services as a practitioner in the field of dentistry." At the time the petition was filed, petitioner's principal place of business was located in Hampton, Virginia. Dennis Katz (Dr. Katz) is a licensed dentist, and his wife, Karen (Mrs. Katz), is a dental hygienist. Dr. Katz was and is the sole shareholder of the petitioner's stock and he was and is the president. Mrs. Katz was and is the corporate secretary. Petitioner could only operate its dental practice through its duly licensed dentist, Dr. Katz. From 1977 through 1997, Dr. Katz did not work for any other dentist or have any other dental practice.

In 1981, petitioner and Dr. Katz entered into a management agreement whereby Dr. Katz agreed to provide dental services for and to manage the corporation. This agreement remained in effect during the years 1996 and 1997. During these years, Dr. Katz

spent 80 percent of his working time treating patients and the remaining time was spent working on general administrative matters of the practice. Dr. Katz made all of the medical and administrative decisions and was responsible for the operation and management of the corporation.

From its inception, petitioner employed a secretary and various dental assistants and hygienists, one of whom was and is Mrs. Katz. Dr. Katz supervised all the employees.

Petitioner maintained a corporate checking account, and all funds from the dental practice were deposited into that account. Dr. and Mrs. Katz had signatory authority over the corporate account, and the corporate expenses were paid from that account. When Dr. Katz was paid compensation, he wrote a check to himself from the corporate account. Dr. Katz had personal bank accounts into which these checks were deposited.

Petitioner's corporate income tax returns and the Katzes' joint Federal income tax returns were prepared by Bruce Carter, C.P.A. Mr. Carter added the checks payable from the corporate checking account to Dr. Katz to determine the "management" fees paid to Dr. Katz, and the total amount of the management fees was deducted as "other deductions" on the corporate returns. The corporate returns showed no deductions for compensation of officers.

Dr. Katz prepared and filed employment tax returns (Forms 940 and 941) for the corporation. Petitioner did not treat Dr. Katz as an employee for employment tax purposes. Petitioner never issued Dr. Katz a Form 1099 or Form W-2, Wage and Tax Statement, reflecting the payments made by the corporation to Dr. Katz. On its 1996 and 1997 corporate returns, petitioner deducted $93,803.78 and $115,884.75, respectively, as management fees. Dr. Katz reported these amounts as income on Schedule C, Profit or Loss From Business, on the joint returns filed for both years.

The Internal Revenue Service audited the 1977 and 1980 joint returns of Dr. and Mrs. Katz. The agent conducting the audit did not have the authority to examine the corporate or employment tax returns of the corporation. There is no record of petitioner's corporate or employment tax returns then being examined. In 2000, respondent determined that Dr. Katz was an employee of petitioner during 1996 and 1997, and petitioner was liable for employment taxes for both years.

The parties have stipulated that, if petitioner is recognized as a corporate entity for tax purposes, Dr. Katz was a "statutory employee" of petitioner from 1971 to and including 1997, and during these years he performed "substantial services" for petitioner. There is also no dispute as to the amount of tax due if section 530 does not apply.

OPINION

1.  The Statutory Background

Sections 3111 and 3301 impose taxes upon employers under the Federal Insurance Contributions Act (FICA) and the Federal Unemployment Tax Act (FUTA), respectively, commonly referred to as employment taxes, based on the wages paid to employees.  In this case it is stipulated that, if petitioner's corporate entity is not disregarded, Dr. Katz was an employee for employment tax purposes.  See sec. 3121(d) and the regulations thereunder.[2] Petitioner, however, argues that under section 530 of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2763, 2885 (hereinafter section 530),[3] Dr. Katz should not be deemed to be an employee.

Section 530(a)(1) provides:

> SEC. 530.  CONTROVERSIES INVOLVING WHETHER INDIVIDUALS ARE EMPLOYEES FOR PURPOSES OF THE EMPLOYMENT TAXES.
>
> (a) Termination of Certain Employment Tax Liability for Periods Before 1980.--,
>
> (1) In general.--If--
>
> (A) for purposes of employment taxes, the taxpayer did not treat an individual as an employee for any period ending before January 1, 1980, and

---

[2]  Sec. 3121(d)(1) defines an employee, inter alia, as "any officer of a corporation".  See also sec. 3306(i).

[3]  Sec. 530 was amended by adding subsection (e).  See Small Business Job Protection Act of 1996, Pub. L. 104-188, sec. 1122, 110 Stat. 1766.  This amendment has no effect on the resolution of this case.

> (B) in the case of periods after December 31, 1978, all Federal tax returns (including information returns) required to be filed by the taxpayer with respect to such individual for such period are filed on a basis consistent with the taxpayer's treatment of such individual as not being an employee,

then, for purposes of applying such taxes for such period with respect to the taxpayer, the individual shall be deemed not to be an employee unless the taxpayer had no reasonable basis for not treating such individual as an employee.

Under section 530(a) there are two separate questions--viz, whether the corporation filed all the returns required to be filed, and second whether the corporation had a reasonable basis for not treating Dr. Katz as an employee.

With regard to the first question, section 6041(a) requires, inter alia, that

> All persons engaged in a trade or business and making payment in the course of such trade or business to another person, of * * * compensations * * * of $600 or more in any taxable year * * * shall render a true and accurate return to the Secretary, under such regulations * * * as may be prescribed by the Secretary, setting forth the amount of such * * * income, and the name and address of the recipient of such payment.

The term "person" includes corporations. Sec. 7701(a)(1). Furthermore, under the regulations, petitioner was required to file a Form 1099 reflecting the compensation paid to Dr. Katz. Sec. 1.6041-1(a)(2), Income Tax Regs. Petitioner does not seem to dispute that, if its corporate entity is recognized, it was required to file Forms 1099. In all events, if the corporate entity is recognized, consistent with the Court of Federal Claims, we hold that petitioner would have been required to file

those forms, and section 530 relief would not be available.  See

Western Management, Inc. v. United States, 45 Fed. Cl. 543, 553-

554 (2000); see also General Inv. Corp. v. United States, 823

F.2d 337, 341 (9th Cir. 1987); Pariani v. Commissioner, T.C.

Memo. 1997-427.

Petitioner's guiding argument is relatively simple and may

be stated as follows.  If petitioner is not recognized as an

corporate entity for tax purposes, it was not required to file

Forms 1099, and Dr. Katz, then operating as a sole

proprietorship, would not have been an employee.  Dr. Katz,

therefore, would not be an employee of his own proprietorship.

We turn to that question.

2.  The Corporate Entity

As a general rule, a corporation is recognized as a distinct

taxable entity from its shareholders even though it has only one

shareholder who exercises total control over its affairs.  Moline

Properties, Inc. v. Commissioner, 319 U.S. 436 (1943).  This

recognition extends to corporations formed to perform personal

services rendered by its shareholders.  Keller v. Commissioner,

77 T.C. 1014 (1981), affd. 723 F.2d 58 (10th Cir. 1983).[4]  There

are, however, situations where the corporate entity will be

---

[4]  The decision in Keller v. Commissioner, 77 T.C. 1014 (1981), affd. 723 F.2d 58 (10th Cir. 1983), turns on an allocation of income under sec. 482.  For there to be a sec. 482 allocation, however, there must be two or more recognizable entities.

disregarded because it was an agent of the shareholder or it did not perform the services or otherwise conduct business. See, e.g., Commissioner v. Bollinger, 485 U.S. 340 (1988); Roubik v. Commissioner, 53 T.C. 365 (1969). Petitioner relies on these lines of cases. In other words, vis-à-vis Dr. Katz, the corporation should not be regarded as having a separate existence.

In Bollinger, the taxpayer formed a corporation with which he entered into a written agreement that the corporation would hold title to certain improved property as the taxpayer's "agent for the sole purpose of securing financing". Commissioner v. Bollinger, supra at 342. The corporation would convey the property on demand and had no obligation to maintain the property nor to perform any functions with respect to the management of the property. The taxpayer performed all functions with respect to the property. On his tax return, the taxpayer claimed deductions relating to the property. The Government disallowed the deductions contending that the property belonged to the corporation and under Moline Properties, Inc. v. Commissioner, supra, the deductions were attributable to the corporation. The Supreme Court disagreed and held that on these facts the corporation was an agent of the taxpayer.

The relevant facts in Roubik were summarized by the Court in its opinion, as follows:

[The corporation] appears to have existed * * * as a mere set of bookkeeping entries and bank accounts.  It did not enter into any arrangements to provide the service of its "employees" to any of the institutions, doctors, etc., for whom * * * [the shareholder/doctors] provided services.  It did not own any equipment, incur any debts for rent, office or medical supplies or services, or for salaries, except for the salaries of the * * * [shareholder/doctors].  The only "shared" expense, i.e., the only expense which was incurred jointly by the * * * [shareholder/doctors] was $45 a month for the time * * * [the] office secretary devoted to maintaining records of income and expenses received and paid by * * * [the corporation].  The maintenance of these records for tax purposes appears to be the only real business activity engaged in by the corporation. * * * [Roubik v. Commissioner, supra at 379.]

If anything, this case is the antithesis of both lines of cases.  There is no evidence that Dr. Katz and petitioner intended that the corporation's role was that of an agent for Dr. Katz.  Furthermore, petitioner was not the "shell" corporation as in Roubik v. Commissioner, supra, that provided no services.  The corporation maintained its own bank account, separate from the accounts of Dr. and Mrs. Katz.  It bought and put into service equipment and claimed tax deductions resulting from equipment that Dr. Katz used in performing services for the corporation.[5] It had employees (other than Dr. Katz) who aided and assisted in the services provided and paid employment taxes on and for these employees.  It prepared bills and collected payments for the services rendered by the corporation.  Under these circumstances the corporate identity, vis-à-vis Dr. Katz, cannot be ignored.

---

[5]  See petitioner's 1996 corporate return that shows the purchase of a panoramic x-ray machine.

In a somewhat similar vein, petitioner argues that it merely was a conduit for payment from customers to Dr. Katz, and, therefore, was not required to submit Forms 1099.  See Marlar, Inc. v. United States, 151 F.3d 962 (9th Cir. 1998); Deja Vu Entertainment Enterprises of Minnesota, Inc. v. United States, 1 F. Supp. 2d 964 (D. Minn. 1998).  In those cases the taxpayers/corporations were in the adult entertainment business and provided stage rental for dancers.  Essentially, the customers paid the dancers, and the dancers then paid the stage rental to the corporations.  The corporations did not file Forms 1099.  The Government argued that the corporations were required to file Forms 1099 on payments made by the corporations, and, therefore, section 530 relief was not available.  The courts held that there were no payments, within the meaning of section 6041 and the regulations thereunder, made by the corporations to the dancers.

We would be turning a blind eye to the facts if we were to say that there were no payments from petitioner to Dr. Katz. Petitioner billed the patients, and the patients paid petitioner. Petitioner then paid Dr. Katz and the other employees for the services they rendered.

As far as this record is concerned, petitioner has been recognized by Dr. Katz for almost 30 years presumably in part because of perceived benefits of Dr. Katz being petitioner's

employee.  See, e.g., <u>Keller v. Commissioner</u>, 77 T.C. 1014 (1981).  But, the corporate form may also have detriments, and we would be reluctant to allow petitioner to turn on and off its existence at will.[6]

<u>Decision will be entered</u>

<u>for respondent</u>.

---

[6]   The second part of the sec. 530 relief relates to a taxpayer's having a reasonable basis for treating the person to whom the compensation was paid as other than an employee.  In this regard, under sec. 530(a)(2) a taxpayer is treated as having a reasonable basis for not treating an individual as an employee if the taxpayer relied, inter alia, on "a past Internal Revenue Service audit * * * in which there was no assessment attributable to the treatment (for employment tax purposes) of the individuals holding positions substantially similar to the position held by this individual".  Sec. 530(a)(2)(B).  Petitioner suggests that the audits of Dr. Katz's returns would satisfy this requirement.  We, however, need not decide this issue.